A. BORDEN et al. v. RICHMOND AND DANVILLE RAILROAD COMPANY.

*Contract— Unilateral Error—Evidence.*

1. Where there has been no misrepresentation, and where there is no ambiguity in the terms of the contract, a party to it cannot be allowed to evade the performance of it by the simple statement that he has made a mistake.   If, however, a proposal by one evidently contains a mistake, the other cannot, by snapping at it, be permitted to take advantage of the error.

2. Where a local freight agent of defendant railroad company made a written offer to ship cotton between two points at 69½ cents per hundred for plaintiff, who, at once, and in writing. accepted the offer, and it was conceded that the said local agent was authorized to make such proposal on the part of the defendant, and the agent plainly and unequivocally expressed what he understood to be the price to be charged for carrying cotton, and there was no misunderstanding between the plaintiff and the agent as to any of the terms of the alleged contract; and it appeared that, by an error in the transmission of a telegram from the general freight agent to the local agent, "89½" was changed to "69½": *Held,* (1) that the contract was binding on defendant company, notwithstanding the mistake; (2) that in an action by the shipper (who had paid the larger rate under protest) to recover the difference between the two rates, all evidence in regard to plaintiffs' purchase of cotton was irrelevant, and plaintiff was entitled to recover.

(CLARK, J., dissents *arguendo*.)

This was a CIVIL ACTION, tried before *Brown, J.*, and a jury, at April Term, 1893, of WAYNE Superior Court

The plaintiffs complained for damages for the non-fulfil-ment of a contract of affreightment between Goldsboro and Liverpool, alleging that the defendant agreed to transport five hundred bales of cotton for plaintiffs between those points at a rate of sixty-nine and a half cents per one hundred pounds and afterwards declined to do so, but charged eighty-nine and a half cents, which latter amount plaintiffs paid under protest, and brought suit to recover the difference between eighty-nine and a half cents and sixty-nine and a half cents.

Defendant admitted that its agent at Goldsboro quoted a rate of sixty-nine and a half cents on October 20, 1891, and that plaintiffs accepted it, but allege that this rate was quoted by a mistake of a telegraph operator, as appears in the evi-dence.

The plaintiffs introduced the following paper, the genuine-ness of which was admitted:

"GOLDSBORO, N. C., October 20. 1891.

"*Mr. Borden:* Good until Saturday; can place five hun-dred bales Goldsboro to Liverpool at sixty-nine and a half cents per one hundred pounds.   November sailing.

"69½ accepted.                    C. M. LEVISTER.
          "A. B."

It was proved that C. M. Levister was the local agent of the defendant at Goldsboro and was the usual person through whom freight rates were communicated to cotton dealers and others in Goldsboro.

Defendant introduced S. G. Freer, the operator in the office of J. H. Drake, general freight agent at Richmond, Va., and proved that by direction of said J. H. Drake on October 19, 1891, he sent from Richmond, Va., to the relay station, Keys-ville, Va., the following telegram:

"RICHMOND, VA., October 19, 1891.
" *C. M. Levister, Goldsboro, N. C.*

"Good until Saturday night; can place five hundred bales Goldsboro to Liverpool eighty-nine and a half cents.

                                        J. H. DRAKE."

This was ·sent to J. A. Thompson, operator at Keysville. The telegraph line was operated by Richmond and Danville Railroad Company.   Mr. Thompson testified that he was the operator at Keysville and that he received this dispatch, but by some mistake, which he could not account for, the message was received by him and sent to Goldsboro in the following form:

                                        "RICHMOND.
" *C. M. Levister:* Good until next Saturday night; can place five hundred bales Goldsboro to Liverpool sixty-nine and a half cents.                    J. H. DRAKE."

Mr. J. H. Drake testified that he was the general freight agent of the Richmond and Danville Railroad Company in October, 1891, and alone authorized to make rates for ocean shipments, etc.   That on October 19, 1891, he authorized the transmission of the rate of eighty-nine and a half cents, Goldsboro to Liverpool.

Local agents are not authorized to give rates for transportation to foreign ports.   They must apply to me.   Upon cross-examination the witness testified that he sent the rates through the local agents; that such is the custom, unless merchant applies to him direct.

C. M. Levister testifies that " he was in October, 1891, agent at Goldsboro; that he received telegram No. 3, quoting rate sixty-nine and a half cents, on October 19, and on October 20 made the offer, Exhibit No. 1, which was accepted by Arnold Borden at that time.   Borden delivered the first lot of cotton October 26, 1891, and then on to October 31, I

issued him bill of lading at eighty-nine and a half cents.   I notified him before any cotton was delivered that we could not take cotton at sixty-nine and a half cents per one hundred pounds, and that there was an error in the rate as first quoted.

" On October 20 I sent following telegram to J. H. Drake:

"'GOLDSBORO, October 20, 1891.
*J. H. Drake, Richmond:*

Arnold Borden accepts room and rate, 69½ cents, for five hundred bales cotton, Goldsboro, N. C., to Liverpool, England.   Advises engagement number, etc.   Also wire quick if we can offer room for five hundred more bales at same rate.
C. M. LEVISTER.
9 30 A. M.    F. C. & M. P.
10.50 P. M.'

" And on October 21 or 22 I received this reply:

"' *C. M. Levister:*

Your wire of the 20th: We have no record whatever of having quoted 69½-cent rate on cotton from Goldsboro to Liverpool.   Give me full information.   Answer.
J. H. DRAKE.'

" On the next day I received this telegram:

"'October 23, 1891.
*C. M. Levister, Goldsboro, N. C.:*

Telegram of the 19th quoted rate of 89½ cents per hundred pounds to Liverpool on cotton, and not 69½.   We cannot contract for cotton at less than 89½ cents.
J. H. DRAKE.'

"This telegram of 22d is first positive information I had that the 69½-cent rate was a mistake.

"I don't remember telling plaintiff anything on the 21st. As soon as I received this telegram (No. 6), I called Borden's attention to it. It is dated October 22. I showed it as soon as I received it. I might not have received it until late on 22d, and showed it next morning. When I received this message of 22d, and showed it to Borden, I notified him for the first time that the 69½ rate was a mistake, and I would not receive it at less than 89½."

The defendant asked his Honor to charge that there was never a contract or a coming together of the minds of plaintiffs and defendant to ship cotton at 69½ cents per one hundred pounds to Liverpool, but that as the error was that of defendant's agent, the defendant was obliged to indemnify plaintiffs against actual loss. That as plaintiffs had not shown the price at which the cotton was sold, and had not shown or attempted to show any loss, they were entitled to recover nominal damages only. That defendant was not obliged to pay plaintiffs any profit plaintiffs would have made on the reduced price for freight on cotton.

His Honor refused the instructions, and charged the jury that the plaintiffs were entitled to recover the difference as claimed in the complaint between 89½ cents per one hundred pounds and the rate quoted by Levister of 69½ cents per one hundred pounds on five hundred bales, the amount being admitted to be $____

The defendant excepted from the refusal to charge and to the charge as given.

The issues and responses were as follows—

"1. Did the defendant contract with plaintiffs on October 20, 1891, to receive and ship five hundred bales of cotton to Liverpool at 69½ cents per one hundred pounds, as alleged by plaintiffs?"

"Yes."

"2. Was this contract made by defendant's agent at Goldsboro at the rate of 69½ cents in consequence of a mistake

made by defendant's operator at Keysville in transmitting a telegram, as alleged by defendant?"

"Yes."

"3. Did defendant refuse to receive and ship said cotton at 69½ cents?"

"Yes."

"4. What damage are plaintiffs entitled to recover?"

"$483.39."

There were no exceptions to issues.

*Messrs. Allen & Dortch* and *Aycock & Daniels*, for plaintiffs.
*Messrs. Busbee & Busbee*, for defendant (appellant).

BURWELL, J.: It is conceded that the local agent of the defendant at Goldsboro made a written offer to ship for the plaintiff five hundred bales of cotton to Liverpool in November, 1891, and that the said agent was authorized to make such a proposal on the part of the defendant, and that plaintiff at once accepted this offer, his acceptance being also in writing. Furthermore, it seems to be conceded that the said agent plainly and unequivocally expressed what he understood to be the price to be charged by the defendant company for the transportation of the cotton, and there was no misunderstanding between the plaintiff and the agent as to any of the terms of the alleged contract.

Now it is evident that, if the agent is considered, not as the mere mouthpiece of the defendant corporation, through whom the intention of its higher officers in this matter was to be simply communicated to the plaintiff, but as its authorized contracting agent—its *alter ego* in this affair—there was no error or mistake at all, much less one that would prevent the written proposal and its written acceptance from constituting a valid contract, by the plain terms of which each party would be bound. In this view of the matter there was no variance between the intention of the defendant and the

expression of that intention. The contracting agent expressed in unequivocal language exactly what he intended to express. The plaintiff accepted the offer thus made to him. The defendant cannot escape liability on this contract by asserting that its agent would not have so conducted himself if he had known at that time what he was afterwards informed of. And it might well be insisted on the part of the plaintiff that, in the absence of notice to the contrary, he had a right to assume that that agent had power to act for his principal in this matter, and that defendant should not be allowed to dispute that authority.

Passing by that question and assuming, for the sake of argument, that the local agent at Goldsboro was the mere mouthpiece or spokesman of the defendant in this matter, and that plaintiff knew this fact, then we have here a variance between the intention of the proposer (the defendant) and the expression of that intention. There was an error in the expression of the defendant's intention, but that error was unknown to the plaintiff. He had no good reason to suspect that the writing submitted to him did not correctly express the intention of the defendant. He did not "snap up" an offer which he knew or suspected was erroneously expressed. He merely accepted a plainly expressed proposition. In the view of the matter we are now taking, the question, then, is: If, in the expression of the intention of one of the parties to an alleged contract, there is error, and that error is unknown to and unsuspected by the other party, is that which was so expressed by the one party and agreed to by the other a valid and binding contract, which the party not in error may enforce? The law is well settled, says Mr. Lawson in his work on contracts, § 206, that a man is bound by an agreement to which he has expressed his assent in unequivocal terms, uninfluenced by falsehood, violence or oppression, and it judges of an agreement between two persons exclusively from those expressions of their intention which

are communicated between them. And Wharton, in his work on the same subject, § 196, quotes from *Tamplin* v. *James*, L. R., 15 Ch. Div., 215, this general rule, as he denominates it: " Where there has been no misrepresentation, and where there is no ambiguity in the terms of the contract, the defendant cannot be allowed to evade the performance of it by the simple statement that he has made a mistake. But," he adds, " where a proposal evidently contains a mistake, an acceptor, by snapping at it, will not be permitted to take advantage of the mistake." In section 202*a* he announces the rule thus : " A unilateral mistake of expression of one party cannot be set up by him as a ground for rescinding a contract or for resisting its enforcement, when his language was accepted by the other party in its natural sense. But when the blunder made by the proposer is obvious, an acceptor will not be allowed, by catching it up, to take an unfair advantage." An essential bilateral error as to the nature of a contract avoids it, if based upon such error, but a unilateral error will not have that effect. Bishop on Contracts, §§ 701 and 702. "It would open the door to fraud if such a defence was to be allowed. It is said that it is hard to hold a man to a bargain entered into under a mistake, but we must consider the hardship on the other side." *Tamplin* v. *James, supra*. We must consider also that " one of the remarkable tendencies of the English Common Law upon all subjects of a general nature is to aim at practical good rather than theoretical perfection, and to seek.less to administer justice in all possible cases than to furnish rules which shall secure it in the common course of human business." 1 Story E. Jur., § 111.

We think, therefore, that all evidence in regard to plaintiff's purchase of the cotton was irrelevant. He had a valid contract for its shipment at $69\frac{1}{2}$ cents. His rights thereunder could not be affected by a notice that the defendant's agent had been misinformed, as we have seen.

37

Hence, we need not consider the exception taken by the defendant to the admission or exclusion of evidence relating to that part of the controversy. Under the law as we hold it to be, it being admitted that the plaintiff had been required to pay more than the contract price for the shipment of his cotton, he was entitled, as his Honor held, to recover the difference between the sum so paid and the contract price.

Affirmed.

CLARK, J. (dissenting): The evidence is not controverted that the local agent at Goldsboro did not have authority to quote rates of freight from that point to Liverpool (passing, as the freight must, over so many lines besides that for which he was agent); that the general agent at Richmond, in reply to an inquiry from local agent, quoted a rate of 89½ cents, and that by some error in transmission by telegraph this was received at Goldsboro as 69½ cents, and so quoted to the plaintiffs.

The mistake having been made by an agent or an employee of the railroad company, it is bound, but only to the extent that the plaintiffs had been misled and damaged by having acted upon it before the mistake was corrected, which was done promptly—as soon as the general agent had notice of the mistake which had been made in the transmission of the message.

If, by reason of the supposed reduction of the rate from 89½ cents to 69½ cents, the plaintiffs had, before correction of the mistake, sold cotton in Liverpool at less than the market price, which is very improbable, or had bought cotton somewhat above the market rate in Goldsboro, which is possible, to whatever extent they had been thus damaged by relying upon the correctness of the dispatch they are entitled to compensation. There was no offer on the part of the railroad company through its general agent, who alone was authorized to speak for it, to carry at 69½ cents. The local agent

did not even hold himself out as having authority. He merely reported the query of defendant to the general agent and communicated his reply to the plaintiffs. There was no offer by the defendant, by accepting which a contract was made between the parties. There was simply an erroneous message delivered to the plaintiffs by an agency used by the defendant. The plaintiffs' right to recover is not based upon a breach of contract on the part of defendant, for it made none at 89½ cents, nor offered to make it. The right to recover is based upon the mistake made by the agent in delivering a message, which the plaintiffs had a right to rely upon till corrected, and to the extent that they were so misled and damaged by reliance upon the supposed message they are entitled to recover, but no further. This damage was not necessarily and not even probably the difference between 89½ cents and 69½ cents, but only the lower price at which the plaintiffs sold, or at the higher price at which they bought by reason of supposing they had gotten 20 cents per hundred pounds off of the usual rate of freight, and this not on the 500 bales, but on only so much thereof as they had bought or sold before the correction of the error was made known to them. This is the measure of plaintiffs' loss, and not the value of the good bargain they thought they had made. There was no contract at 69½ cents. The mind of the defendant never entered into such. There was a mistake of the agent used in transmitting the message, and the loss caused thereby should be borne, not by the party who in good faith relied on it, but by the party who employed such agency.

The principal is only bound by the acts of its agents within the scope of their agency. The scope of Drake's agency at Richmond was to contract for rates. He made no offer at 89½ cents. He made no mistake. He has done nothing that fixes any contractual liability upon the defendant. Yet, he is the only one who could have done so. The scope of the

agency of the telegraph operator at Chase City, who, it seems,
made the mistake, was not to make contracts, but to trans-
mit messages. The defendant is only bound by his acts
within the scope of its agency. Whatever damage the plain-
tiffs sustained by the mistake in relaying the message, the
principal, the defendant company, is liable for, but not for a
breach of a contract, since that agent could not make a con-
tract, if he had offered to do so, and certainly could not by
making a mistake. In relaying the message he inadvert-
ently took or erroneously transmitted six dots ( . . . . . . ), the
telegraphic marks for six, instead of a dash and four dots
( − . . . . ), the sign for eight. This mistake of a dash for two
dots, was, so to speak, a *lapsus pennæ* on his part. It was
no mistake on the part of the contracting agent. The learn-
ing about unilateral mistakes has, therefore, no bearing, for
there was no mistake on either side to the contract. The two
sides simply never agreed. The defendant offered 89½ cents,
the plaintiffs thought they were accepting 69½ cents.

Take a homely example. A landowner has an overseer,
who is authorized to employ hands. The overseer sends a
message by one of his employees to some one that he will
give him employment for a year at $10 per month. By rea-
son of carelessness, drunkenness or stupidity, the messenger
says the overseer will give $30 per month. Could it be con-
tended that the landowner must pay for a year three times
the usual price for an ordinary farm hand?" Not at all.
He is bound by the act of his overseer, who is authorized to
hire hands, in the absence of collusion and the like. But as
to the messenger, the principal is bound by his mistake only
to the extent of the damages actually suffered by the other
party, by relying upon the message before it is corrected. In
the present case it does not appear whether the telegraph line
was operated by the defendant's agents and employees, or by
an independent company. Nor does it make any difference
to the plaintiffs, as the telegraph agency acted for the defen-

dant, who is liable for damages caused by its mistake. If the telegraph line was operated by a telegraph company, the defendant could recover of it what damages it has to pay plaintiffs by reason of its mistake in transmission. But that does not affect this question, which is as to the measure of damages the defendant must pay, by reason of the mistake. The Court should have instructed the jury, as prayed by the defendant, "that there was never a contract or coming together of the minds of plaintiffs and defendant to ship cotton at $69\frac{1}{2}$ cents per 100 pounds to Liverpool, but that as the error was that of defendant's agent the defendant was obliged to indemnify the plaintiffs against actual loss," and that " the defendant was not obliged to pay plaintiffs any profit plaintiffs would have made on the reduced price for freight on cotton."